The court in the report that was put out this week asked us to address the college of eviction this week, and I think it's appropriate we address that first. There is no outstanding counterclaims for enforceability or invalidity. There was, in the original complaint, a claim for unenforceability or invalidity, but the district court, with its discretion, its proper to say a certain law, entitled to a certain law, declined to rule on those. So, all of the issues... Because they were framed in a declaratory adjustment complaint? Yes. If they had been in a direct complaint, there would not have been any restriction. I don't know how you would frame that in a declaratory judgment action. If there had been an original complaint for patent infringement, which would be the other way, and there was counterclaims for invalidity and unenforceability, it would be appropriate for those to be considered. But under the Sixth Circuit Law and the Federal Circuit... What about the fact that the judge never mentioned unenforceability? She mentioned invalidity and said, in essence, I don't care to reach that. But she didn't say anything at all about unenforceability. No, she didn't, because that wasn't an issue. She ruled on the infringement issue. What do you mean it wasn't an issue before it was raised in the fleet? It was raised... And it was never abandoned, was it? No, it was never abandoned. Then why is it not before her? It was before her. The point is that under Sixth Circuit Law and the Supreme Court Law, she has the discretion not to rule on those issues. But where did she exercise that discretion when she never mentioned unenforceability? Oh, it was in footnote 12. She did it in terms of invalidity. I don't think she did it in terms of... But invalidity and unenforceability aren't the same thing. Oh, I agree with that. I agree with that. I agree with that completely. But obviously she knew that that was before her. She had motions for summary judgment brought by Mr. Monti on that issue. So it was clear that that issue wasn't... So you're saying we should read her reference to invalidity being an issue that she could discretionarily skip to also cover unenforceability. I'm suggesting that what you read is read her judgment and her judgment says that she found the final judgment and she closed the case. That's on page 19. She said that. Whether it's true or not maybe is debatable. But she certainly said that. She said that and... Are we bound by that? This is a final judgment because I say so. I think that it's not necessary for her to specifically say that she is declining to rule on the unenforceability issue. I think that you read footnote 12 as saying that she's declining to rule on the other issues which she has discretionary to do. That's the point. She doesn't say other issues. She says invalidity. I agree with that. I agree completely with that. All right. Well, we understand your position. How about on the merits? On the merits, first of all, let me deal with what we want here. What we want is a reversal of the non-infringement finding so that we can proceed with the case on infringement, both under the doctrinal equivalence and under literal infringement, and also on the breach of contract. We think that there's clearly disputed issues of fact on both of those, on all of those grounds. Disputed issues of fact. Disputed issues of fact, yes. And also with regard to the question of literal infringement, we think that that can be taken care of in terms of the undisputed facts which are before this report in terms of claiming the structure. There really is not too much issue there. I don't understand you to be asking for a revamp. I read page 66 of your brief as saying you're entitled to summary judgment in your favor right now, and that there should be a reversal with respect to the confidentiality agreement. Yes, that's right. So am I right then that you're not asking for a revamp on anything, you're asking for a total victory right here by this court? No, that's not what we're asking for. What we're asking for is the finding of infringement, literal infringement, which was raised by our partial summary judgment. That's what we're asking for. And sending it back for decision reversal and trial with regard to the infringement claims, and also with regard to the defenses that were raised in the liberty and enforceability. Just let me ask, the selectively applying force limitation, that was an original claim construction, correct? Yes. Then it appears that when the judge was considering motions for summary judgment, she basically kind of altered that construction. Is that whether that was whether either construction was right or wrong is not my question. Was there sort of an alteration of the construction at that point? It looks like there was, yes. And the point I'm making with regard to that is, irregardless of the construction that was made, that what that means is that the selection by the force producing assembly will change the degree of angular displacement of the guidance. And that is a selective element of the claim. That's clear for me. The other issue, the horizontally oriented body pad and the transverse support, those, as I looked at the record that we have in the appendix, those limitations were not construed by the district court. Rather, in summary judgment, as I looked at the little claim construction chart that she had, and it says, I think, no construction necessary. But then in the summary judgment proceedings, it does appear, well, let me try. Then in the summary judgment proceedings, she says, nevertheless, there's no issue of fact. The app lounge cannot meet these. And she goes into the discussion of the single piece of material. So is the district court judge in the summary judgment bringing in a claim construction, or is she simply ruling on what she perceives to be no issue of dispute, no genuine issue of material fact? My question blundered a bit. Yeah, I think I do. Apologize for a little. That's quite all right. I understand. Let me try to respond to it. With regard to the horizontally oriented limitation, there was agreement at the Markman hearing as to what that meant. And we submitted, at the close of discovery, we submitted our expert reports based on the claim construction as we understood it and as the parties agreed to it at the Markman hearing. This whole idea of reinterpreting. There was no construction of the term. That's right, because the party agreed. What was the construction they agreed to? What they agreed to was that it doesn't have to be on a horizontal plane. It actually could move and be an angle during the exercise. That's what the parties agreed to. But it seems what we're left with now is dispositive of the interpretation of that is what end means, right? Exactly. Let me try to get to it. Was there any construction of the word end? There was no construction of the word end. Well, therefore, I think maybe this is piggybacking on what Judge Shaw said. It seems to me, reading her opinion, whether she calls it plain construction or not, she construes end to be a clear boundary. And based on that, she says there's no clear boundary in the infringing device. Fair statement. The point is that the claim doesn't call for that. The claim just calls for an end to the body pattern. What do you think end means? How would you describe it? Would you disagree that it's a clear boundary? Where it stops. With what? The point is that she found the fabric, in part, the upper part of the fabric was the chair back. The lower part of the fabric was the seat. If you look at the manuals, which we've given in our briefs, clearly they understood that there was an end. There was a place where the seat back stopped and the seat began. That was an end. The court asked in questions, measure the body pattern of seat fours. Both sides submitted experts, and those experts- Right, and the district court goes through those experts. Well, she says- That's your experts. Correct. Yeah, both experts. And actually, they both measured three to four-tenths apart in terms of their distance. Both recognized there was an end. Both recognized there was an end. But you're saying we should construe end exclusively to mean a seat region, right? There's no reference in the plain language to a seat region. Yes, there is. It calls for the first end of the body pattern. Yes. And that's what I'm saying. There's a first end of the body pattern. And you're construing that first end to be the seat region. Exactly. You're construing that to be the body. No, all I'm saying is that it doesn't say that. You're providing your own interpretation. Well, I think the pattern makes clear that the lower part of the body is the part that is the body pattern. And the guy member is supporting the torso. That's made clear. Do you want to save the rest of your rebuttal time? Yes, I do. Thank you, Mr. Klein, Mr. Caldwell. I don't see your name. Correct me? Yes, Paul Caldwell. Thank you. Paul Caldwell, thank you. Welcome. Thank you very much. And please support. I'd like to just start off and address the jurisdictional question briefly. I think the confusion may be that with respect to the unenforceability counterclaim, I think, is what's referred to in the order. It's really an unenforceability claim because we brought the action as a declaratory action. But there was not a declaratory judgment action on unenforceability. It was just on invalidity and non-infringement. There was a passing reference to the patent being unenforceable. But if you look at the caption on the declaratory judgment claim in question, it only refers to invalidity and non-infringement. So I think that may explain why the district court never thought that she had an unenforceability counterclaim. Unenforceability was an issue by virtue of a defense that was asserted of inequitable conduct. So if I can move on to the merits. I just wanted to address the dispositive issues with respect to selectively applying a force. We've stated in a position on brief that it was clear that there was an estoppel. Mr. Monti had argued for a claim construction at Markman that said they selectively applying- What sort of estoppel are you asserting? It's a judicial estoppel. Where do we have a ruling of the court on the merits of the case that was based on acceptance of that earlier position? I'm not aware of any precedent that this court has where it estops a party. No, I think Chief Judge Michel was asking where in this case do you have a ruling showing the court relying on the statements that were made in respect to the 250-pound man and the 120-pound man. I think he's talking about in this case, where do you have it? Well, the court's summary judgment order refers to a reliance on that doctrine and preventing Mr. Monti from taking a position contrary to what he took at Markman, which was that the force applied by the- But her original claim construction, correct me if I'm wrong, but her original claim construction didn't seem to take into account any, I'll say, input, if you will, from the weight of the user of the device. The claim instruction simply says, the force producing assembly applying the appropriate force to bias the guide member as needed during the exercise. Yeah. I mean, I don't- She clearly doesn't- Yeah, I see what your point is. She clearly doesn't say- There doesn't seem to be a basis for judicial estoppel here, assuming it's properly- She seizes on the language of the argument at Markman, how the force producing assembly itself was selective in asking itself, how much energy do I need to have this person, and he's referring to two different people, the 120-pound and the 220-pound person. How do I- How much energy do I need to have this person complete the exercise and ask for the selection of this person? I think you're responding to the problem that Judge Shull and I are trying to focus on. It's a requirement of judicial estoppel that the court have relied on the position previously taken by the party to be estoppel. Certainly, there was a different position articulated by your opponent at the Markman hearing compared to in the summary judgment papers, but where is there an adoption and reliance on the earlier position by the district judge? The best way I can answer it, I think, is that she had an understanding based on arguments and evidence that were put in front of her that the way the force producing assembly worked in the patent was it selected the force as a function of the user. There was argument for support for that, this idea of a self-regulating force that they cited her to in the specification, and then said- You're saying there's this kind of a, I don't want to say subselenity, but you're saying there's an implied reliance. I guess what's the argument you're making is there's an implied reliance on the example that was given in the colloquy during the Markman hearing in the word appropriate. Yes, appropriate as needed. Appropriate force. Yes. That's your argument? That's right. They argued for that particular construction, appropriate as needed. And I think what the court said was, well, what she understood then to mean by appropriate as needed is that that force producing assembly will apply a different force depending on the user, what the weight of the user is. That's the only example that they gave, and they repeated that twice in the record. Mr. Stein said that getting to the other limitations we were discussing with Mr. Stein, the body pad and the- Transversely oriented support. Right. Yes, that's it. Thank you. There was clearly no claim construction, but he said that the parties agreed on what that turned into. I think Judge Prost asked, where's that agreement? Do we see? Can you- No, there was no agreement on that. In fact, at Markman, there was a discussion of what body pad meant. There was an argument made by Fitness Quest as to what body pad meant, or at least the way it was discussed in the patent. Mr. Money said no construction was required of body pad. Ultimately, the court said no construction is required. But in order to determine what the infringement question was with respect to that, doesn't that construe what the word end means? I don't think it's necessary yet. Well, doesn't the infringement question turn on the meaning of end? Well, it does. Ultimately, it does. But one of the questions that was asked, and I think you piggybacked on Judge Shaw's question about, well, is this just a straightforward application of the claims? I don't want to mischaracterize your words, but application of the claims to the accused product. And the answer to that question is yes. The patent claims require an end in the body pad. The only end in the one-piece fabric that's at that particular boundary that was of concern was at the very top of the device. Well, let me ask you, if in the infringing product it's one piece of fabric, but if there were like a little seam etched in and a little instruction, upper part, upper body goes above this line, lower body goes below that, would you concede that that would be an end to the lower body? No. I think, as the district court said, that there had to be a clear stoppage. Well, why is that? Well, it's still a— She said it's an ambiguity. Didn't she say that it's ambiguity as to where exactly this line ends? Well, what if there's a seam? Well, I guess a seam would still—there isn't a seam. But if there's a seam, I guess there's a boundary in a sense, but there's not really an end, because it's one continuous—it's still one continuous— Well, that seems a little unclear, because you kind of suggest that end has a clear, ordinary meaning, and therefore there was no need for construction. But it seems like the judge did, in a way, construe it, and she says clear boundary. But now your answer to the question is, even if there's a clear boundary, that's not a sufficient situation. Well, what I meant by that is not—is that she used boundary in this case, I think, because there clearly wasn't, in the one-piece fabric, with no seam, there's no end and there's really no boundary. I mean, she relied on the fact that if you look at the expert, and there's all this ambiguity, and I don't know where to lay that bondage, but we're talking about a financial test model. The difference between all of these calculations is very small, right? Well, actually, what happened with the experts is, if you looked at the expert reports, there was actually—I think in the end, there were five different discussions of what the body pad represented in the ab lounge. So ultimately, if you're just talking about the seat, what the court had asked the parties to do is measure what they regard as the seat, not the body pad, the seat. And there was some difference in what their measurements were. It was a fairly small difference. The claim that doesn't matter. That doesn't matter, because the claim requires a body pad. And if I could note a couple of things on selectively applying a force, the only way we think that you can reach infringement of that limitation with the ab lounge is to read out the term selectively. The argument now made for infringement is selectively means just a force that's applied based on a given angular orientation of the guide member. Like bungee cords. Well, in the accused product, yes, the bungee cords. That's the corresponding—what they say is the corresponding force producing assembly. And their own expert admitted, attesting that he did it in support of an infringement opinion, that the force applied by the bungees is solely a function of how far they're stretched. That's it. There's no weight. You don't take any consideration of user weight or any other factor. It's just a matter of how far those bungees are stretched. And in our view, it's completely inconsistent with not only what they argued at Markman, but what the patent says in terms of what selection means. Now, to be sure, the patent really only talks about user selection. It doesn't talk about the selection of a force producing assembly. Now, Mr. Stein says, well, that's in the patent. And I think you look in vain for any reference at all to the force producing assembly itself selectively applying a force. That's a distinction that they made based on claim 15 and claim 16. But there's no discussion whatsoever of that in the patent. So to find infringement in this case, based on meeting that limitation, effectively reached that selectively out of the case. Now, they said, one of their point of factual dispute is they said, well, their expert, Dr. Rice, excuse me, Dr. Prawl, said that the force applied by the bungees is affected by the user. That's false. What Dr. Prawl said was he was looking at tests performed by fitness sports expert Dr. Pienza, which he was measuring what's the total force on the chair back, all the forces. So not only the force produced by the bungees, but the force produced by the weight of the user, friction, and the weight of the chair back, all those forces. And what he said was, well, the forces, the overall forces are going to be different depending on the weight of the user. That's a very, very different point than saying that the force applied by the bungees. Again, what they say is the force producing assembly changes with the user weight. There's absolutely no support for that. Just a couple of points on the limitations horizontally oriented body support. The only equivalence argument made, the only equivalence argument made was the belated argument for equivalence well after expert discovery and in opposition to summary judgment motion. The district court properly refused to consider that late-breaking equivalence argument. And as to 2 into 1, they rely on this 2 into 1 doctrine. Initially they said it's doctrinal equivalence. I think they've abandoned that. Or, excuse me, they originally said it was literal and doctrinal equivalence. I think they've abandoned that. They rely on the Sunstud's case. The Dahle case, which distinguishes Sunstud, says you can't rely on the doctrine of equivalence to remove limitations. You can't combine two claim components together under the doctrine of equivalence where there are limitations relating to those components that would effectively be erased. So even if they were to be permitted to a certain equivalence case, the 2 into 1 doctrine doesn't help them. As for the breach of contract case, they did not defend on the same grounds below. Did Mr. Stein argue that? I don't remember him arguing it. He didn't argue. It would be proper for you to argue it. He has it in his brief. You have your responses. You're agreeing to leave it there. Well, if I could just say one thing, Your Honor, on that is the cases that they rely on, they can argue it now for the first time on appeal. Because of the sufficiency to what they say is a lack of sufficiency. Those cases stand for the simple proposition that an uncontested motion for summary judgment can't be granted. The court has to actually look at the evidence. That's what this court did. They looked at all the evidence and found it to be specific on that point. All right. Thank you, Mr. Stein. Thank you. Four minutes for rebuttal. Thank you, Your Honor. Let me clear up something right away. And that is the question of whether there is a difference in position by Mr. Monti between the Markman hearing and the Brown. And I'd like to point to two things. First of all, I'd like to point you to the graph, which is on page 13 of our blue brief. And that really is the evidence that the measurements that were made by Dr. Proud. They were adopted by Fitness Quest. There was no dispute on them. The district court never touched those, never even commented on them. And what that shows is as you have the angular displacement, there's a selective force provided by the force-producing assembly. Whether the force-producing assembly is a bungee or whether it's a gas spring as described in the preferred bodies, the undisputed evidence is they both act the same. And the point is that the weight comes in because how that's going to respond to different users is going to be different. Now, sure, if somebody stands beside the unit and moves it down, they're not on the unit. But this is during the exercise. Furthermore, it's going to respond very differently depending on what the torso weight is of different people. I'd like to point you to page 15 of our gray brief where we quote the evidence from Dr. Proud with regard to commenting on Bramson's test. Now, Bramson's test was with a dummy. The dummy had no arms, though, no head. All it had was a body part, and it was a clear one piece. And what he says is whether you have a 400-pound man or whether you have a 100-pound woman, it's going to make it very different as to how that responds. How is it going to make it different? It's going to make it different in terms of how much you go back and how far you go back based on the weight of the user. That's the point. And that's the point we were making from the beginning. It's the point that we made at the hearing on infringement. There was really no difference. Sure, we could find our position, because at the markings there's – So where are we left now? Can you accept what you say? Is it summary judge is reversing it, or is the Senate saying that there's a factual issue with regard to infringement and we ought to send it back for trial? I think that at least you should send it back for trial. But I submit to you that there really isn't any dispute as to how the machine operates and the fact that based on the claim construction, your Honor can enter a judgment of infringement. The question of – Based on the claim construction, what's the claim construction? Claim construction is – The original judge's claim construction? Yes, exactly. Or the one that she had, her modification. Either one. You come out the same way. The point is that the weight of the user – Contrary to what the district court said, there was an undisputed fact that the weight did not have an impact on the avalanche. In fact, it does. And the undisputed evidence is that it does. And the undisputed evidence is that the preferred embodiments in the patent operate precisely the same way. Let me just respond on a couple other points. With regard to the horizontal orientation, at the Markman hearing, FitnessTech took the position that the horizontal oriented meant that the body pack could be angled. And so our position was it's an undisputed issue. There's no reason for making any claim construction on this because the parties agreed. This whole idea that we late presented our position is just wrong. We relied on what the position was of FitnessQuest in the answers to interrogatories. And it wasn't until after discovery was closed, we submitted our expert report in a rebuttal report and in the motion for summary judgment, that they raised the issue of this court changing their position on the interpretation of horizontally oriented. At that point, we did the right thing. We submitted an expert report on it. We also offered that expert for cross-examination. And they didn't take us up on the cross-examination. The court didn't allow, you know, they could allow the expert deposition to be taken. That was the point that we were making. All right. I think we have the positions of both sides clearly in mind. We thank both counsel to take the case on their part. Thank you, Your Honor. All rise.